IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: RICHARD SONOSKI | * | Chapter 7 |
| a/k/a RICHARD F. SONOSKI | * | |
| a/k/a RICHARD FRANCIS | * | |
|    SONOSKI, JR., | * | |
|    Debtor | * | |
| | * | Case No.: 1-04-bk-07294 |
| RICHARD SONOSKI | * | |
| a/k/a RICHARD F. SONOSKI | * | |
| a/k/a RICHARD FRANCIS | * | |
|    SONOSKI, JR., | * | |
|    Plaintiff | * | |
| | * | |
| vs. | * | Adv. No.: 1-05-ap-00132 |
| | * | |
| PROTHONOTARY OF ADAMS | * | |
| COUNTY, PENNSYLVANIA, | * | |
|    Defendant | * | |

## OPINION

### Procedural and Factual History

Before the Court is an adversary case filed *pro se* by Richard Sonoski ("Debtor") seeking an injunction to bar the Defendant, the Prothonotary of Adams County, Pennsylvania ("Defendant") from pursuing collection activities on a claim for court fees and costs. For the reasons set forth below, the injunction will be granted.

On December 8, 2004, Debtor, appearing *pro se*, filed a petition under chapter 7 of title 11 of the United States Code ("the Bankruptcy Code"). Debtor listed Defendant as a creditor holding two unsecured nonpriority claims – one in the amount of $103.00 and the second in the amount of $157.45.[1] Defendant was duly served with notice of Debtor's bankruptcy petition. The notice set April 10, 2005 as the last date for filing a complaint objecting to Debtor's

---

[1] Debtor indicated that these debts were "contingent." The Court finds that these debts, which were for court costs and fees associated with protection from abuse and child custody matters, are fixed, and are not contingent.

discharge under 11 U.S.C. § 727, or to object to the dischargeability of a particular debt under 11 U.S.C. § 523. Defendant did not file an objection under either section 523 or 727 at any time. By Order dated May 19, 2005, Debtor was granted a discharge under §727. Notice of the entry of the discharge was mailed to Defendant on May 21, 2005.

On May 27 and July 8, 2005, Defendant sent notices to Debtor requesting payment of the court costs and fees listed as debts in Debtor's petition. Debtor thereafter filed a document styled "Discharged Debtor's Motion for Injunctive Relief," which commenced the instant adversary case brought to enjoin Defendant from making further demands for payment.[2] On August 24, 2005, Defendant filed an "Answer to Motion for Injunctive Relief" ("Answer"). On December 28, 2005, a scheduling order was issued setting certain discovery deadlines and scheduling the trial of the matter for May 25, 2006. On March 6, 2006, the parties filed stipulations of fact and a "Request to Remove Matter from Trial List and Submit on Stipulated Facts and Briefs" ("Request to Remove"). Defendant filed a document entered on the docket as a "Stipulation of Facts and Briefs," but only a stipulation of facts was filed. Neither party submitted a brief citing the relevant legal authorities on the issues before the Court. The matter is ready for decision.[3]

---

[2] A request for injunctive relief initiates an adversary case pursuant to Fed. R. Bankr. P. 7001(7), and thus it should be filed as a Complaint. Because Debtor filed his motion without benefit of counsel, the Clerk of the Bankruptcy Court accepted the Motion as a Complaint and duly opened the instant adversary case.

[3] "This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O). This Opinion constitutes the findings of fact and conclusions of law required under Fed. R. Bankr. P. 7052.

## Discussion

Debtor avers that his liability on Defendant's claims was discharged by the May 19, 2005 Order. Debtor asserts that these costs were discharged because they were listed as debts in his petition, and Defendant failed to object to their dischargeability despite having received notice of the bankruptcy. Defendant's various pleadings are peppered with numerous, cryptic legal assertions in response to Debtor's position. For example, in its Answer, Defendant "denie[s] that [it] is a 'creditor' of a 'debt'(sic) as those terms are defined in the Bankruptcy Code of 1978." (Answer, paragraph 4.) Defendant further asserts that "[f]iling fees imposed by statute as part of the laws of the Commonwealth of Pennsylvania and that are intended to provide access and to defray costs with respect to the County Court system ... are not 'debts' ...." (Answer, paragraph 10 a).) Defendant also asserts that "because of sovereign immunity, fees imposed by Pennsylvania with respect to Protection from Abuse actions in Adams County Court are not 'debts'...." (Answer, paragraph 10 d).) In conjunction, Defendant asserts that 11 U.S.C. § 106 "does not abrogate sovereign immunity [because] specific sections listed therein do not apply to discharge (sic) under Chapter 7[] and recent case decision (sic) raises the question as to whether legislative abrogation of sovereign immunity is constitutional." (Answer, paragraph 10 c). Later, in its Request to Remove, Defendant asserts that "the Bankruptcy Code and the Bankruptcy Courts have no jurisdiction over the courts of the Commonwealth of Pennsylvania and/or that the costs imposed on Debtor ... are ... the equivalent to 'fines and penalties' and/or the obligation to pay those court costs was not discharged." (Request to Remove, paragraph 4.)

From these assertions, the Court deciphers the following alternative arguments: (1) that the fees and costs at issue are not debts because they are imposed pursuant to statute; (2) that sovereign immunity under the Eleventh Amendment bars the classification of the

Commonwealth's fees and costs as "debts;" (3) that § 106 of the Bankruptcy Code, that purports to abrogate sovereign immunity in bankruptcy proceedings, is unconstitutional; (4) that this Court does not have jurisdiction over Defendant; and (5) that the fees and costs imposed against Debtor were the equivalent of nondischargeable fines or penalties under 11 U.S.C. §523(a)(7). I will address the issues raised by these arguments *seriatim*.

  a. *Whether fees and costs imposed against a debtor by a state court are "debts."*

The Bankruptcy Code defines the word "debt" as "a liability on a claim." 11 U.S.C. § 101(12). In relevant part, it broadly defines the word "claim" as a "right to payment. . . ." 11 U.S.C. § 101(5)(A). It contains no language excluding state court costs from its purview. "[T]he term 'claim' is sufficiently broad to encompass any possible right to payment." *In re Mazzeo*, 131 F.3d 295, 302 (2nd Cir. 1997) (citing *Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 707-08, 83 L.Ed.2d 649 (1985); *In re M. Frenville Co., Inc.,* 744 F.2d 332, 336 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (other citations omitted.) Defendant cites no legal authority for its assertion that the fees and costs at issue are not debts as defined in the Bankruptcy Code. This bald assertion disregards the inclusion in the term "debt" of obligations such as taxes, which also are imposed by statute. *See e.g.* 11 U.S.C. 523(a)(1). Accordingly, I conclude that Defendant's first argument is wholly without merit.

  b. *Whether sovereign immunity protects fees and costs from classification as "debts."*

Defendant's next argument is that principles of sovereign immunity change the nature of state court fees and costs from "debts" into some other form of obligation (not otherwise identified by Defendant) that is impervious to the operation of federal law. Defendant does not provide a statutory citation for this assertion or describe the historical basis or public policy that

4

might explain this particular form of legal alchemy. Here again, Defendant cites no cases to support its assertion. I conclude that this argument is also meritless.

   *c.*  *Whether Section 106 was effective to abrogate states' sovereign immunity.*

  Defendant's third argument appears to question the effectuality of 11 U.S.C. § 106, which states that "sovereign immunity is abrogated as to a governmental unit ... with respect to" certain sections of the Bankruptcy Code, including Section 523. Defendant generally cites the case of *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed 2d 252 (1996) to support its assertion. This argument may be summarily dismissed also. In *Seminole Tribe*, the Supreme Court considered a provision of the Indian Gaming Act that purported to abrogate states' sovereign immunity. The Court held that Congress could not abrogate 11th Amendment immunity through the exercise of its powers under Indian Commerce Clause of Article I of the Constitution. In a footnote, the Court implied that Congress could not abrogate state sovereign immunity through any provision of Article I, including the Bankruptcy Clause. *Seminole Tribe*, 517 U.S. at 77, n.16. However, the Supreme Court recently has acknowledged that its statements in *Seminole Tribe* "reflecting an assumption that the holding in that case would apply to the Bankruptcy Clause" were "erroneous." *Central Virginia Community College v. Katz*, 126 S.Ct. 990, 996 (January 23, 2006). In *Katz*, the Supreme Court held that:

> [t]he history of the Bankruptcy Clause, the reasons it was inserted in the Constitution, and the legislation both proposed and enacted under its auspices immediately following ratification of the Constitution demonstrate that it was intended not just as a grant of legislative authority to Congress, but also to authorize limited subordination of state sovereign immunity in the bankruptcy arena.

*Id.* The Court recognized that the Framers of the Constitution plainly intended to give Congress the power to correct the practices rampant at the time of the Convention whereby one state

5

Case 1:05-ap-00132-MDF Doc 9 Filed 09/14/06 Entered 09/15/06 10:42:14 Desc
Main Document  Page 5 of 9

would fail to respect a discharge order entered in another state.[4]  By ratifying the Constitution, states "acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* at 1004. There are virtually no powers vested in the bankruptcy courts that are more central to its function than the power to discharge debts and, ancillary to entry of the discharge, the power to enforce its observance. Accordingly, Defendant's third argument is also without merit.

      d.      *Whether this Court has jurisdiction over Defendant.*

As indicated at footnote 2 above, this Court's jurisdiction is established in Sections 157 and 1334 of Title 28 of the United States Code, which provide, in relevant part, as follows.

> **(a)** Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> **(b)** Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C.A. §1334.

> **(a)** Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
>
> **(b)(1)** Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
>     **(2)** Core proceedings include, but are not limited to: matters of administration of the estate; allowance of claims or exemptions; . . . and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . . .

---

[4]The importance of a uniform approach to the recognition of discharge orders is appreciated more fully when one recognizes that a "discharge" in the colonial period often meant release from prison and not forgiveness of financial obligations.

Case 1:05-ap-00132-MDF    Doc 9    Filed 09/14/06    Entered 09/15/06 10:42:14    Desc
Main Document      Page 6 of 9

**(3)** The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

28 U.S.C.A. § 157.

Given my finding that the instant matter plainly involves a "claim," this Court's subject matter jurisdiction is clearly established through 28 U.S.C. § 157(b)(2). To the extent that Defendant's idle challenge to this Court's jurisdiction is premised on an assertion of sovereign immunity, its argument is without merit. As the Supreme Court reasoned in *Katz*, the jurisdiction of a bankruptcy court is *in rem*, premised on Debtor and his estate, and is not an *in personam* action against creditors. The court's exercise of jurisdiction does not interfere with state sovereignty even when state interests are affected. *Katz,* 126 S.Ct. at 1000 – 01.

      d.     *Whether the fees and costs imposed against a party to a civil proceeding in state court are the equivalent to nondischargeable "fines" or "penalties."*

A discharge under section 727 does not discharge a debtor from a debt that is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. 11 U.S.C. § 523(a)(7). "To fall within the provisions of this section, a debt must satisfy three requirements: (1) it must be 'for a fine, penalty, or forfeiture'; (2) it must be 'payable to and for the benefit of a governmental unit'; and (3) it must not be 'compensation for actual pecuniary loss.'" *In re Hollis*, 810 F.2d 106, 108 (6th Cir. 1987) (quoting *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed. 2d 230 (1986)). None of the debts at issue here are labeled as "fines" or "penalties" or "forfeitures." The record provides no reason to conclude that these debts are anything other than what they are called – fees and costs.

7

"Cases barring dischargeability under § 523(a)(7) generally involve criminal or tax-related penalties, and 'not anything analogous to the award of costs in a civil proceeding.'" *In re Thompson*, 16 F.3d 576, 581 (4th Cir. 1994) (quoting *In re Tapper,* 123 B.R. 594 (Bankr.N.D.Ill.1991)). Defendant cites no cases to support its position that these debts are nondischargeable fines and penalties. They admittedly relate to a civil matter. Moreover, even in criminal cases, "costs" have been determined to be "compensation for actual pecuniary loss," which remain dischargeable. *See, e.g., Caggiano v. Office of the Parking Clerk* (*In re Caggiano*), 34 B.R. 449 (Bankr. D. Mass. 1983) ("surcharges" to recover administrative costs of registrar making proper records dischargeable). Therefore, Defendant's final alternative argument is also unavailing[5]

### Conclusion

I conclude that the Defendant has failed to articulate any basis to support its assertion that the debts cannot be discharged. I further conclude that pursuant to 11 U.S.C. § 727(b), the debts at issue were discharged in the general discharge issued in this case on May 19, 2005.[6] The

---

[5] Whether by luck or good judgment Defendant did not raise 11 U.S.C. § 523(a)(17) as a basis for a finding that the debts at issue were not discharged. Section 523(a)(17) provides that a bankruptcy discharge does not discharge a debt "for a fee imposed by a court for the filing of a case . . . or for other costs and expenses assessed with respect to such filing . . . ." In fact, despite this ostensibly controlling language, section 523(a)(17) is unavailing to Defendant. It is well recognized that, having been enacted into the Bankruptcy Code through legislation targeting prison litigation reform (the Prison Litigation Reform Act of 1995), "section § 523(a)(17) applies only to fees and costs imposed *on prisoner litigants* under the federal in forma pauperis statute." *In re Hough*, 239 B.R. 412, 416 (9th Cir. BAP 1999).

[6] Section 727(b) of the Bankruptcy Code provides that

> [e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief ....

8

issuance of a general discharge imposes a permanent injunction against collection activities by pre-petition creditors for pre-petition debts.[7] Given Defendant's admissions, and the clear documentary evidence, I conclude that Defendant violated the discharge injunction by sending letters to Debtor demanding payment of the debt. A party who knowingly violates the discharge injunction can be held in contempt under 11 U.S.C. § 105(a). *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006). A party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the sanctions are justified. *Id.* In the instant case, Debtor seeks only an injunction and not the imposition of sanctions. Accordingly, sanctions will not be imposed, but an Order will be issued enjoining Defendant from further collection efforts.

BY THE COURT,

*[Signature: Mary D. France]*
Bankruptcy Judge

Date:   September 14, 2006

*This document is electronically signed and filed on the same date.*

---

11 U.S.C. § 727(b).

[7]Section 524(a) of the Bankruptcy Code provides that

> [a] discharge in a case under this title–
>
> **(2)** operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524.